FIRST DIVISION 
 NOVEMBER 12, 1996








No. 1-95-2698


THE PEOPLE OF THE STATE OF ILLINOIS, ) APPEAL FROM THE
 ) CIRCUIT COURT
 Plaintiff-Appellee, ) OF COOK COUNTY.
 )
 v. )
 )
EDWARD HAWKINS, ) HONORABLE
 ) JOHN MORRISSEY,
 Defendant-Appellant. ) JUDGE PRESIDING.


 PRESIDING JUSTICE CAMPBELL delivered the opinion of the
court:
 Following a jury trial in the circuit court of Cook County,
defendant Edward Hawkins was found guilty of aggravated posses-
sion of a stolen motor vehicle and possession of burglary tools. 
Martin Wtulich, who was charged in the same information as
defendant, was tried separately and is not a party to this
appeal. The trial court sentenced defendant to 36 months of
probation and seven days of the Sheriff's Work Alternative
Program. The trial court also ordered defendant to pay $10,000
in restitution to the victim. Defendant now appeals his convic-
tion and the order of restitution.
 The record on appeal indicates the following facts. During
jury selection, the trial court asked a panel of potential jurors
en masse questions regarding whether they understood that defen-
dant was presumed innocent, that the burden of proof was on the
State and that the defendant was not required to present a
defense. The trial court also asked the group whether they could
be fair and impartial jurors.
 Following jury selection and opening statements, John
Schiele testified that he was the owner of West Lake Motors in
Elmhurst, Illinois. Schiele testified that on May 23, 1994, he
contacted the police to report that a dark green and tan 1994 BMW
740il had been stolen from his lot. The car retailed for approx-
imately $64,000. Schiele also stated that he found a door lock
laying on the ground where the car had been parked.
 Schiele testified that he next saw the car again approxi-
mately two and one-half weeks later, at the repair shop that did
work for the dealership. According to Schiele, the left front
wheel was turned backward, the driver's side door lock and
ignition lock tumbler were removed, and the hood, fenders and
doors were damaged. The windows, passenger's side door lock and
trunk lock were intact. Schiele admitted that many people at the
dealership had access to the car and could have driven the car. 
Schiele testified, however, that he had never seen defendant at
the dealership and had not given him permission to remove the car
from the lot.
 Chicago Police Officer Kenneth Moore testified that on
May 28, 1994, he and his partner were patrolling near the inter-
section of North and Wood in Chicago when he saw a beat car in
pursuit of a green BMW travelling eastbound on North Avenue. 
Officer Moore's partner, who was driving their patrol car,
attempted to curb the green BMW, but the car turned south on Wood
Street. The left front part of the green BMW struck another car
almost immediately. The driver of the BMW, who Officer Moore
identified as Mr. Wtulich, exited the car and began running
northward on Wood Street. The passenger, who Officer Moore
identified as defendant, fled southward on Wood Street. 
 After checking with the officer in the other beat car,
Officer Moore used his radio to broadcast a flash message, then
accompanied his partner in a search for Wtulich. Officer Moore
and his partner caught Wtulich, from whom they learned an
address. Officer Moore then returned to the green BMW. Officer
Moore observed that a door lock had been removed and the ignition
had been "pulled." Officer Moore also observed a screwdriver on
the seat of the vehicle, which Officer Moore was able to use to
start the car. Officer Moore took the green BMW to the police
station.
 When Officer Moore arrived at the police station, other
officers brought defendant to him. Officer Moore testified that
he interviewed defendant in the presence of two other officers. 
Officer Moore informed defendant of his Miranda rights; defendant
stated that he understood them. Officer Moore then questioned 
defendant about the green BMW. Defendant stated that approxi-
mately a week earlier, past midnight on a Sunday, he had gone to
West Lake Motors, entered the lot, punched out the lock and
ignition, used a screwdriver to start the car and drove it from
the lot.
 On cross-examination, Officer Moore stated that he did not
personally know whether anyone other than he had started the car
with the screwdriver found in the car. Officer Moore admitted
that he did not show the screwdriver recovered from the car to
defendant. Officer Moore also admitted that he did not take a
written or videotaped statement from defendant. Officer Moore
also testified that because defendant was the passenger in the
car, he would need a confession or an eyewitness to secure a
conviction.
 Following the admission of the State's exhibits, the State
rested. Defendant moved for a directed finding. The trial court
denied the motion. Defendant rested without presenting evidence.
 Defendant renewed his motion for a directed finding at the
conclusion of the jury instruction conference. The trial court
denied the motion. Following closing arguments, jury instruc-
tions and deliberations, the jury found defendant guilty of
aggravated possession of a stolen motor vehicle and possession of
burglary tools.
 The trial court denied defendant's post-trial motion on
May 9, 1995. The trial court later sentenced defendant to 36
months of probation and seven days of the Sheriffs Work Alterna-
tive Program. The trial court also ordered defendant to pay
$10,000 in restitution to the victim. On May 23, 1995, the trial
court denied defendant's motion to reconsider the issue of
restitution. Defendant now appeals his conviction and the order
of restitution.
 I
 Defendant contends that the trial court erred in denying his
motion for a directed finding. A defendant's motion for a
directed finding requires the trial court to consider whether a
reasonable mind could fairly conclude the guilt of the accused
beyond a reasonable doubt, considering the evidence in the light
most favorable to the State. People v. Withers, 87 Ill. 2d 224,
429 N.E.2d 853 (1981). Defendant was convicted of aggravated
possession of a stolen motor vehicle; the relevant statute
provides that it is unlawful for
 "a person not entitled to the possession of a
 vehicle having a value of $25,000 or greater
 to receive, possess, conceal, sell, dispose
 or transfer the vehicle, knowing that the
 vehicle has been stolen or converted[.]" 625
 ILCS 5/4-103.2(a)(3) (West 1992).
Defendant contends that the State failed to introduce any evi-
dence that the 1994 BMW stolen from West Lake Motors was the same
BMW observed by Officer Moore.
 In this case, the record shows that on May 23, 1994, Schiele
reported that a green and tan 1994 BMW 740il worth $64,000 was 
stolen from his lot. Schiele also stated that he did not give
defendant permission to remove the car from the lot. Officer
Moore testified that on May 28, 1994, defendant admitted that he
took the green BMW Officer Moore observed from the lot of West
Lake Motors after midnight of the previous Sunday. Taking
judicial notice of calendar dates and corresponding days of the
week (Roberts v. Sisters of Saint Francis Health Services, Inc.,
198 Ill. App. 3d 891, 902, 556 N.E.2d 662, 669 (1990)), it should
be noted that the Sunday prior to May 28, 1994 was May 22, 1994.
 Schiele testified that a door lock was laying on the ground
of the lot where the car was located before it was stolen. The
BMW Officer Moore observed was missing a door lock. Schiele
testified that he saw the BMW that was stolen from his lot
shortly after May 28, 1994; it was not only missing a door lock,
but also had damage to its fenders and hood. Officer Moore
observed the green BMW in defendant's possession crash, particu-
larly the left front fender of the car. Defendant told Officer
Moore that he punched out the lock and ignition and used a
screwdriver to start the car. The BMW Officer Moore observed had
the ignition "pulled." Officer Moore found a screwdriver in the
BMW in defendant's possession.
 Defendant relies on People v. Fernandez, 204 Ill. App. 3d
105, 561 N.E.2d 1131 (1990), and People v. Hope, 69 Ill. App. 3d
375, 387 N.E.2d 795 (1979). However, in neither of these cases
did the defendant admit that he broke into a car, used a screw-
driver to start the vehicle and drove it away. The facts of this
case are much closer to those in People v. Ambrose, 171 Ill. App.
3d 87, 525 N.E.2d 536 (1988), in which this court affirmed a
conviction based on the testimony of the victim and police
testimony of defendant's admissions.
 In sum, viewing the record in the light most favorable to
the State, the testimony of the car's owner and defendant's
statement to Officer Moore is sufficient that a reasonable mind
could fairly conclude that the Green BMW observed by Officer
Moore, which defendant admitted taking from West Lake Motors
after midnight on May 22, 1994, was the very same BMW Schiele
reported stolen later on May 23, 1994. Accordingly, the trial
court did not err in denying defendant's motion for a directed
finding.
 II
 Defendant also argues that he was denied a fair trial due to
improper comments made by the State during closing and rebuttal
arguments. It is well established that improper remarks do not
constitute reversible error unless they result in substantial
prejudice to the accused. People v. Baptist (1979), 76 Ill. 2d
19, 29, 389 N.E.2d 1200, 1205 (1979). The test for measuring
prejudice resulting from closing argument is straightforward: the
prejudice must be substantial enough that, in its absence, the
verdict would have been different. E.g., People v. Morgan, 112
Ill. 2d 111, 492 N.E.2d 1303 (1986). Each case must be decided
on its own facts. Baptist, 76 Ill. 2d at 29, 389 N.E.2d at 1205. 
Defendant identifies two comments that allegedly caused substan-
tial prejudice; this opinion addresses each in turn.
 First, defendant objects to the prosecution's reference to
his attorney as a "paid advocate." It is improper to refer to
defense counsel as a "hired gun." People v. Everette, 220 Ill.
App. 3d 453, 458, 581 N.E.2d 109, 111 (1991); People v. Shaw, 98
Ill. App. 3d 682, 685, 424 N.E.2d 834, 837 (1981). The term
"paid advocate," while slightly less pejorative than the term
"hired gun," nevertheless denigrates the assistance of the
counsel to which the accused is constitutionally entitled and
thus falls within the scope of Everette and Shaw.
 Yet this court held in both Everette and Shaw that the
improper comments did not warrant reversal of the respective
convictions, not only due to the weight of the evidence in those
cases, but also because the trial court in each case sustained
objections to the improper comments and admonished the jury to
disregard them.
 The State argues that the improper comment was harmless
because it was fleeting and did not directly charge the defense
attorney with any impropriety. The State relies on People v.
Murillo, 225 Ill. App. 3d 286, 297, 587 N.E.2d 1199, 1207 (1992),
and People v. Rodriguez, 134 Ill. App. 3d 582, 592, 480 N.E.2d
1147, 1153 (1985). However, in Murillo, the trial court sus-
tained an objection to the State's reference to the fact that
defense counsel paid for a gunshot residue test. In Rodriguez,
the State improperly impugned defense counsel, but not by noting
that he or she was paid. Moreover, the court concluded in
Rodriguez that the evidence of guilt was overwhelming.
 Everette, Shaw, Murillo and Rodriguez stand for the proposi-
tion that this sort of improper comment will not warrant a
reversal where the evidence is overwhelming or the trial court
promptly sustains an objection to the comment. In this case, the
trial court overruled the defense objection. Moreover, while the
evidence in this case is sufficient to convict, it is not over-
whelming. As noted by the defense, the State did not present
evidence of the automobile's identification number, the chain of
custody of the car was not strong and the identification testi-
mony regarding the car was somewhat vague. These weaknesses are
particularly glaring in a case where such evidence would have
been easy to present. Given the record on appeal, we are com-
pelled to conclude that this comment was not harmless.
 Moreover, defendant contends that the State improperly com-
mented on the fact that defendant did not testify. An accused
has a constitutional right not to testify as a witness in his own
behalf and the prosecutor cannot directly or indirectly comment
on the exercise of that right. People v. Arman, 131 Ill. 2d 115,
125-26, 545 N.E.2d 658, 663 (1989). However, the State may
describe the State's evidence as uncontradicted, even though the
defendant is the only one who can contradict it, as long as the
comments are not intended to direct the jury's attention to the
defendant's silence. People v. Leonard (1988), 171 Ill. App. 3d
380, 386, 526 N.E.2d 397, 401 (1988). When determining whether
the accused's right not to testify has been violated, a reviewing
court examines the challenged comments in the context of the
entire proceeding. Arman, 131 Ill. 2d at 126, 545 N.E.2d at 663.
 The passage defendant objects to reads as follows:
 "Now, the Defendant has exercised his rights
 here, and he has basically chosen not to
 plead to this particular charge because he
 doesn't want to accept responsibility for
 what he has done.
 "Well, as voices of the community, you
 must show him that he is going to be respon-
 sible for his actions. He is an adult. If
 he steals a car, he is going to be held re-
 sponsible. He can't get up here and tell you
 that it was the other guy, I didn't know what
 was going on because --
 "MR. GREENBERG [Defense Counsel]: Ob-
 jection, Judge.
 "THE COURT: Counsel may argue.
 "MR. HUGHES [The State]: -- that simply
 isn't what the facts bare [sic] out. The
 facts bare [sic] out that he knew the car was
 stolen, that he stole the car, that he ran
 from the police. Simply, the facts bare
 [sic] his guilt."
The transcript of proceedings also includes a sidebar in which
defense counsel explicitly argued that the State improperly
commented on defendant's failure to testify. The trial court
ruled that the comment referred to defense counsel, not the
defendant; accordingly, the objection was again overruled.
 However, as defense counsel notes on appeal, substituting
"defense counsel" for the references to "he" or "him" in the
transcript would have produced the following argument:
 "Now, the Defendant has exercised his rights
 here, and [defense counsel] has basically
 chosen not to plead to this particular charge
 because [defense counsel] doesn't want to
 accept responsibility for what he has done.
 "Well, as voices of the community, you
 must show him that [defense counsel] is going
 to be responsible for his actions. [Defense
 counsel] is an adult. If [defense counsel]
 steals a car, [defense counsel] is going to
 be held responsible. [defense counsel] can't
 get up here and tell you that it was the
 other guy, I didn't know what was going on
 because --
 "MR. GREENBERG [Defense Counsel]: Ob-
 jection, Judge.
 "THE COURT: Counsel may argue.
 "MR. HUGHES [The State]: -- that simply
 isn't what the facts bare [sic] out. The
 facts bare [sic] out that [defense counsel]
 knew the car was stolen, that [defense coun-
 sel] stole the car, that [defense counsel]
 ran from the police. Simply, the facts bare
 [sic] [defense counsel's] guilt."
 This court cannot conclude that the State's references to
"he," "him" or "his" referred to defense counsel. Viewed in the
context of the transcript, the State begins by expressly refer-
ring to "Defendant." We cannot conclude that the State actually
was arguing that defense counsel "stole the car." Indeed, if the
State believed defense counsel was responsible for the crime, the
question would arise as to why the State was prosecuting defen-
dant instead.
 Accordingly, we conclude that the State's comment was
similar to those held improper in People v. Burton, 44 Ill. 2d
53, 254 N.E.2d 527 (1969). The Burton court held that the State
had specifically referred to the defendant's failure to testify
by stating that "he's got to explain the blood on the pants" and
by pointing out that there was no explanation "from him" as to
the source of the bloodstains. Burton, 44 Ill. 2d at 57, 254
N.E.2d at 528 (emphases in original). Nor was this comment
harmless, given that the objection was overruled and the evidence
less than overwhelming.
 In sum, the State here improperly commented on subjects that
fall well within the scope of the rights of the accused guaran-
teed by the fifth, sixth and fourteenth amendments to the Consti-
tution. We are compelled to remind the prosecutors once again
that their duty to protect the rights of the people of Illinois
includes the duty to safeguard these rights of the accused. 
Rodriguez, 134 Ill. App. 3d at 592, 480 N.E.2d at 1153. This
case must be reversed and remanded for a new trial.
 III
 Defendant also raises issues relating to jury selection and
the restitution order entered in this case. However, it is not
at all clear that these issues are likely to arise on retrial. 
Thus, we decline to address them at this time.
 For all of the aforementioned reasons, the judgment of the
circuit court of Cook County is reversed and the case is remanded
for a new trial.
 Reversed and remanded.
 BUCKLEY, J., and WOLFSON, J., concur.